IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| RUDIS HUMBERTO RIOS PENA, | ) |
| Petitioner, | ) |
| v. | ) No. 2:25-cv-03082-TLP-cgc |
| SCOTT LADWIG, | ) |
| Respondent. | ) |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Rudis Humberto Rios Pena, an alien detained in the West Tennessee Detention Facility in Mason, Tennessee, petitions for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (ECF No. 1.) On December 1, 2025, the Court entered an Order directing Respondent to show cause why the Writ should not be granted. (ECF No. 8.) Respondent responded. (ECF No. 10.) And Petitioner replied.[1] (ECF No. 11.) For the reasons stated below, the Court **GRANTS** the Petition.

## BACKGROUND

Around August 2021, Petitioner, a Honduran citizen, entered the United States as an Unaccompanied Alien Child near McAllen, Texas. (ECF No. 1 at PageID 6.) He is now twenty years old. (*Id.* at PageID 7.) He has no criminal history in the United States. (*Id.*) And he recently became engaged. (*Id.*) Petitioner has a pending asylum application with the United

---

[1] The Parties consented to the Court ruling without a hearing. *See* emails from Margot P. Kniffin, Petitioner's Counsel, and Monica M. Simmons-Jones, Respondent's Counsel, to the Court. (Dec. 9, 2025) (on file with the Court); ECF No. 10 at PageID 25.)

States Citizenship and Immigration Services and has applied for a valid employment authorization document. (*Id.*; ECF No. 10 at PageID 25.) But he has no lawful status. (*See* ECF No. 1-2.) Although Petitioner once resided in Virginia, he temporarily relocated to Tennessee for seasonal employment. (ECF No. 1 at PageID 7.)

On November 6, 2025, Petitioner went to assist his cousin who had been in a car accident in Millington, Tennessee. (*Id.*; ECF No. 10 at PageID 25.) The responding officers asked for Petitioner's identification and then requested assistance from agents associated with the "Memphis Safe Operation." (ECF No. 1 at PageID 7; ECF No. 10 at PageID 25.) The United States Immigration and Customs Enforcement ("ICE") took custody of Petitioner the next day. (ECF No. 10 at PageID 25.) The United States Department of Homeland Security ("DHS") then provided Petitioner with a Notice to Appear. (ECF No. 1-2 at PageID 14.) They allege that he entered the country without a valid entry document and that he is an immigrant without "a valid unexpired passport, or other suitable travel document, or document of identity and nationality" in violation of 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182 (a)(7)(A)(i)(I).[2] (*Id.*) Petitioner remains in ICE custody at the West Tennessee Detention Facility in Macon, Tennessee.[3] (ECF No. 10 at PageID 25.)

Yet DHS and the Executive Office of Immigration Review ("EOIR") have not held a bond hearing for Petitioner. (*See* ECF No. 1 at PageID 7.) They determined that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), a change from a decades-long practice of affording aliens in Petitioner's position with bond hearings. (*Id.* at PageID 4–5.) The change came in July 2025, when DHS, the Department of Justice ("DOJ"), and ICE issued a new

---

[2] The United States Code here codifies the Immigration and Nationality Act ("INA") §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I). Petitioner's Notice to Appear cites the INA sections.
[3] Respondent does not dispute the above facts. (ECF No. 10 at PageID 25.)

policy.[4]  *See, e.g.*, *Monge-Nunez v. Ladwig*, No. 25-3043, 2025 WL 3565348, at *1 (W.D. Tenn. Dec. 12, 2025).  This new policy subjects aliens who have resided in the United States for over two years and who are apprehended in the interior of the country to mandatory detention.  *Id.*  Before, those same persons were detained and afforded bond hearings under 8 U.S.C. § 1226(a).  *Id.*; *Godinez-Lopez v. Ladwig v.*, No. 25-2962, 2025 WL 3047889, at *1 (W.D. Tenn. Oct. 31, 2025).  (ECF No. 1 at PageID 4–5.)  The Board of Immigration Appeals ("BIA") later upheld this new policy in the case of *In re Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).  So now, immigration judges are bound by precedent which denies aliens like Petitioner bond hearings under § 1225(b)(2)(A).

And for Petitioner, who has resided in the United States for over four years with no criminal history, this means that he now faces detention "without a bond hearing to determine whether he is a flight risk or danger to others."  (ECF No. 1 at PageID 9.)  Petitioner alleges that Respondent's failure to provide him a bond hearing violates 8 U.S.C. § 1226(a), the Administrative Procedure Act, and his Fifth Amendment right to procedural due process.  (*Id.* at PageID 7–9.)  He asks for the Court to grant his Petition and require "that Respondent[] release Petitioner or provide him a bond hearing . . . within 7 days."  (*Id.* at PageID 9.)  Petitioner also seeks attorney's fees and costs under the Equal Access to Justice Act.  (*Id.*)

## **LEGAL STANDARD**

A petition for habeas corpus enables a person to challenge the legality of their custody.  *See Boumediene v. Bush*, 553 U.S. 723, 745 (2008) (quoting *Preiser v. Rodriguez*, 411 U.S. 475,

---

[4] American Immigration Lawyers Association, *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA (July 8, 2025), https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated.") (last visited Dec. 15, 2025).

484 (1973)). And "the traditional function of the writ is to secure release from illegal custody." *Preiser*, 411 U.S. at 484; *see* 28 U.S.C. 2241(c)(3) ("The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]"). Petitioner here asserts that his custody under 8 U.S.C. § 1225(b)(2)(A) is unlawful.

Detention of noncitizens during removal proceedings, is typically governed by Immigration and Nationality Act ("INA") §§ 1225 and 1226. *See* 8 U.S.C. §§ 1225, 1226. Section 1225(b)(2)(A) governs the mandatory detention of "applicant[s] for admission" after an immigration officer has determined that an applicant is not entitled to admission in the United States.

> (b) Inspection of applicants for admission
> . . .
> (2) Inspection of other aliens
> (A) In general
> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). An "applicant for admission" is an alien "present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). "[A]dmission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). And again, detention is mandatory under this section. *See* 8 U.S.C. § 1225(b)(2)(A).

Section 1226(a) provides for discretionary detention:

> (a) Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the

4

>   United States. Except as provided in subsection (c) and pending such
>   decision, the Attorney General—
>   (1)     may continue to detain the arrested alien; and
>   (2)     may release the alien on—
>           (A)     bond of at least $1,500 with security approved by, and
>                   containing conditions prescribed by, the Attorney General .
>           . . .

8 U.S.C. § 1226(a).  Known as the Laken Riley Act, subsection (c) of § 1226 provides for the mandatory detention of aliens found inadmissible or deportable under specific provisions and who have been "charged with," "arrested for," "convicted of," or admit to "having committed" certain listed crimes.  8 U.S.C. § 1226(c).  Aliens arrested and detained under this section "have a right to request a custody redetermination (i.e., bond hearing) before an Immigration Judge." *Lopez-Campos v. Raycraft*, -- F. Supp. 3d --, No. 2:25-cv-12486, 2025 WL 2496379, at *4 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)).  That immigration judge "evaluates whether there is a risk of nonappearance or danger to the community." *Id.* (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).  With that in mind, the Court now turns to the Parties' arguments.

## **ANALYSIS**

The Court must determine whether § 1225(b)(2)(A) or § 1226(a) applies to Petitioner's detention.  This is not an issue of first impression before this Court.  And Respondent detaining Petitioner under § 1225(b) instead of § 1226(a) is not an isolated event.  Indeed, the Court recently considered this same question and held that "§ 1226 governs the arrest and detention of an alien without a criminal history who has been residing in the United States." *See, e.g.*, *Monge-Nunez*, 2025 WL 3565348, at *6; *Padilla-Ugsha v. Ladwig*, No. 25-3045, 2025 WL 3638007 (W.D. Tenn. Dec. 15, 2025).  Because of the increasing frequency of these habeas petitions, other district courts in this circuit have also been asked to consider which statutory provision governs.  They too have determined that § 1226(a) fits in this scenario. *See, e.g.*,

5

*Godinez-Lopez*, 2025 WL 3047889; *Lopez-Campos*, -- F. Supp. 3d --, 2025 WL 2496379.  Other district courts across the country have concluded the same.  As one court just observed:

> By a recent count, the central issue in this case – the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed – has been challenged in at least 362 cases in federal district courts.  The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.  Thus, the overwhelming, lopsided majority have held that the law still means what it always has meant.

*Barco Mercado v. Francis*, -- F. Supp. 3d --, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (footnotes omitted) (collecting cases).  But the Sixth Circuit has yet to decide whether §§ 1225(b) or 1226(a) applies under these circumstances.

With that in mind, the Courts analysis here comes in three parts.[5]  The Court first considers whether it should require Petitioner to exhaust his administrative remedies before hearing this claim.  It then uses statutory interpretation to determine which section applies.  And finally, the Court addresses procedural due process.

## I.     Administrative Exhaustion

Petitioner has not exhausted his administrative remedies.  (*See* ECF No. 11 at PageID 48.)  To do so, he would need to request a bond hearing before an immigration judge, have an immigration judge deny his request, and then appeal that denial to the Board of Immigration Appeals.  Respondent argues that the Court should require Petitioner to go through that process before considering his Petition.  The Court disagrees with Respondent for the reasons below.

---

[5] Because the Court finds that Petitioner is entitled to the discretionary bond process under § 1226 as a matter of statutory interpretation and procedural due process, it need not consider Petitioner's Administrative Procedure Act claim.  (*See* ECF No. 1 at PageID 9; ECF No. 10 at PageID 37.)

Exhaustion is required when mandated by Congress. *See McCarthy v. Madigan*, 503 U.S. at 140, 144 (1992). The Parties agree that no statute requires administrative exhaustion in this context. (ECF No. 10 at PageID 26; ECF No. 11 at PageID 48.) And the Court finds the same. But the Parties disagree on whether the Court should apply the prudential exhaustion doctrine. (No. 10 at PageID 28; ECF No. 11 at PageID 48.)

When Congress has not explicitly mandated exhaustion, the decision to require a petitioner to exhaust their administrative remedies lies within "sound judicial discretion." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). In exercising that discretion, the Supreme Court has explained that "federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *Id.* at 146. Those institutional interests are "protecting administrative agency authority and promoting judicial efficiency." *Id.* at 145.

The Supreme Court also identified several situations in which the interest of the individual weighs heavily against the institutional interests. *See id.* at 146–49. Relevant here, "an administrative remedy may be inadequate where the administrative body . . . has otherwise predetermined the issue before it." *Id.* at 148 (citing *Gibson v. Berryhill*, 411 U.S. 564, 575, n. 14 (1973); *Houghton v. Shafer*, 392 U.S. 639, 640 (1968) (in view of Attorney General's submission that the challenged rules of the prison were "validly and correctly applied to petitioner," requiring administrative review through a process culminating with the Attorney General "would be to demand a futile act"); *Association of National Advertisers, Inc. v. FTC*, 627 F.2d 1151, 1156–1157 (1979) (bias of Federal Trade Commission chairman), *cert. denied*, 447 U.S. 921 (1980); *Patsy v. Florida International University*, 634 F.2d 900, 912–913 (5th Cir. 1981) (en banc) (administrative procedures must "not be used to harass or otherwise discourage

7

those with legitimate claims"), *rev'd on other grounds*, *sub nom. Patsy v. Board of Regents of Florida*, 457 U.S. 496 (1982)); *See also Herr v. U.S. Forest Serv.*, 803 F.3d 822–23 (6th Cir. 2015) ("If administrative review would come to naught, if any efforts before the agency would be pointless, the courts do not insist that litigants go through the motions of exhausting the claim anyway.") (internal quotations omitted).

 Petitioner argues that the BIA's decision in *Matter of Yajujure Hurtado*, 29 I. & N. Dec. 216 (2025) makes requesting a bond hearing from the immigration court "futile."  (ECF No. 1 at PageID 2.)  That is because that ruling upholds the very policy Petitioner is challenging here. (*Id.*)  *See Matter of Yajujure Hurtado*, 29 I. & N. Dec. at 228 (holding that aliens "who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer" because "[r]emaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an 'admission'").  Respondent acknowledges "Petitioner may be unlikely to obtain the relief he seeks through the administrative process based on *Matter of Yajure Hurtado*, which binds the agency and the immigration courts and rejects Petitioner's statutory arguments in this case." (ECF No. 10 at PageID 28.)  But it nonetheless argues that the Court should exercise its discretion and require Petitioner to exhaust his remedies.  (*Id.*)

 The Court agrees with Petitioner that *Matter of Yajure Hurtado*—which is binding on immigration judges—makes exhausting administrative remedies futile here.  For Petitioner to exhaust his remedies, he would need to appeal to the same BIA that just decided *Matter of Yajure Hurtado*.  So the decision on whether to provide Petitioner with a bond hearing has been predetermined.  *See Lopez-Campos*, -- F. Supp. 3d. --, 2025 WL 2496379, at *4 (reasoning that "administrative review is not likely to change Respondents' position that § 1225(b)(2)(A) applies

8

in this context"). What is more, the BIA has no authority to review constitutional challenges. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006). This means that Petitioner can only bring his due process claim in federal court.

It follows that requiring exhaustion in this case would not further the ends of judicial efficiency and protecting administrative authority because it would simply delay the resolution of Petitioner's legal questions. Petitioner's individual interest in having prompt access to this forum outweighs any institutional interests at stake. Another practical reason supports this conclusion. "Bond appeals before the BIA, on average, take six months to complete." *Lopez-Campos*, -- F. Supp. Ed. --, 2025 WL 2496379, at *4 (citing *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025)).

Requiring Petitioner to wait six months—or *any* length of time for that matter—so that the BIA can address an issue it has already decided creates hardship for hardship's sake. The Court declines to impose such a result here.[6]

## II.   Statutory Interpretation

The Parties disagree over whether § 1225(b)(2)(A) or § 1226(a) should govern Petitioner's detention. And the Parties take conflicting views on how to interpret these sections. Petitioner argues that "[t]he plain text of the provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Petitioner." (ECF No. 1 at PageID 5.) That is because § 1226(a)

---

[6] Respondent points the Court to a line of cases out of the Northern District of Ohio that require immigration habeas petitioners to exhaust their bond-related administrative remedies before considering their habeas claims. (ECF No. 10 at PageID 27 (citing *Monroy Vaillalta v. Greene*, --- F. Supp. 3d ---, No. 25-1594, 2025 WL 2472886, at *2– 3 (N.D. Ohio Aug. 5, 2025); *Hernandez Torrealba v. U.S. Dep't of Homeland Sec.*, No. 25-1621, 2025 WL 2444114, at *8–12 (N.D. Ohio Aug. 25, 2025); *see also Laguna Espinoza v. Dir. of Detroit Field Off., U.S. Immigration & Customs Enforcement*, No. 25-2107, 2025 WL 2878173, at *2–3 (N.D. Ohio Oct. 9, 2025)). The Court has reviewed those cases. And finds the reasoning unpersuasive for the reasons discussed above.

applies to those persons who are "charged as being admissible, including those who entered without inspection." (*Id.*)  Meanwhile, § 1225(b) applies only "to people arriving at U.S. ports of entry or who recently entered the United States." (*Id.* at PageID 6.)  Respondent counters that "under § 1225's plain terms, all unadmitted aliens in the United States are "applicants for admission," regardless of their proximity to the border, the length of time they have been present here, or whether they ever had the subjective intent to properly apply for admission." (ECF No. 10 at PageID 29.)  In response, Petitioner contends that Respondent's § 1225(b)(2)(A) interpretation here renders § 1226(c)'s mandatory detention provision superfluous. (ECF No. 11 at PageID 52.)  *See* 8 U.S.C. §1226(c)(1)(E).

When interpreting statutes, courts should construe the text "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)); *see* Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012) ("If possible, every word and every provision is to be given effect.").  To apply this approach, courts give each word within the statute "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'" *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (citation modified) (citing *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010, (2017); *Graham Cnty. Soil & Water Conserv. Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 415 (2005); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 356 (2013)).  And courts "presume that [the] legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992).

For the reasons below, these principles resolve the dispute in Petitioner's favor. Although certain legal principles overlap, the Court first addresses the plain language before considering the statutory framework. *See Ross v. Blake*, 578 U.S. 632, 638 (2016).

### A.  Plain Language

Detention under 1225(b)(2)(A) applies "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted[.]"  8 U.S.C. § 1225(b)(2)(A).  This means the alien must be an "applicant for admission" who is "seeking admission" and "not clearly and beyond a doubt entitled to be admitted."

Section 1225(a)'s definition of "applicants for admission" does not match Petitioner.  The statute defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States."  8 U.S.C. § 1225(a)(1).  And the statute defines "admission" and "admitted" as "with respect to an alien, the lawful entry of the alien into the United States *after* inspection and authorization *by an immigration officer*."  8 U.S.C. § 1101(a)(13)(A) (emphasis added).  So read together, "applicants for admission" means "aliens who have unlawfully entered into the United States after inspection and authorization by an immigration officer."  This definition applies to applicants for admission to have undergone inspection and authorization by an immigration officer.  It does not fit with Respondent's definition of "applicants for admission," which would include aliens like Petitioner who have been residing in the interior of the country for a long time without inspection or authorization by an immigration officer.

Section 1225(a)'s "seeking admission" language also does not apply to Petitioner under these facts.  "Seeking," of course, implies "some sort of present-tense action."  *Barco Mercado*, -

11

- F. Supp. 3d. --, 2025 WL 3295903, at *5. And "seeking" suggests action. So the Court finds that to fall under § 1225(b)(2)(A), the alien must be *actively* seeking admission, not simply residing in the country after entering it unlawfully. Respondent claims that Petitioner is "seeking admission" because he entered the United States without admission. (ECF No. 10 at PageID 31.) But as Petitioner notes, he was not "seeking admission" into the United States when he was detained. (ECF No. 11 at PageID 52.) His unlawful entry occurred years ago. It cannot be said that he was actively seeking admission into the United States at the point of his detention.[7]

The plain meaning of § 1226 better captures Petitioner's situation. For example, it applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Petitioner was apprehended at a car accident in the interior of the country after residing here for several years. The Attorney General therefore has the discretion under this section to "continue to detain [him]" or she "may release [him] on bond." (*Id.*) She may not, though, deny him the bond hearing to which he is entitled. *See* 8 C.F.R. § 1236.1(c)(8), (d)(1).

**B.     Statutory Framework**

The titles of the statutory provisions also suggest that Petitioner's interpretation of them is correct. *See Godinez-Lopez*, 2025 WL 3047889, at *4. "[T]he title of a statute in the heading of a section are tools available for the resolution of a doubt" about a statute's meaning. *Dubin v.*

---

[7] To be sure, the INA recognizes two classes of aliens who are not seeking admission—those who are arriving yet found to be inadmissible because of fraud, misrepresentation, or lack of valid documents, and those that are designated by the Attorney General who have not been admitted or paroled and have not been present in the United States for two years. *See* 8 U.S.C. §§ 1225(b)(1)(A)(i) and 1225(b)(1)(A)(iii). But that does not preclude the existence of other alien classes that do not fall under § 1225. *See, e.g.*, *Padilla-Ugsha*, 2025 WL 3638007.

12

*United States*, 599 U.S. 110, 121 (2023).  Section 1225's title is "Inspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing."  8 U.S.C. §1225 (emphasis added).  Section 1225's title then envisions *arriving* aliens placed in *expedited* removal.  But again, Petitioner was detained over 1,000 miles from the border years after he had crossed it.  And he was not eligible for expedited removal proceedings.  *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).  Meanwhile, § 1226's title is "Apprehension and detention of aliens."  8 U.S.C. § 1226.  That title fits here.  Petitioner was apprehended, not while arriving in the United States, but years later while stopping to help his cousin.  And he is *now* detained.  Section 1225's therefore seems inapplicable to aliens in Petitioner's shoes, but § 1226's title seems spot on.

A look at § 1225's subject matter further undercuts Respondent's interpretation of the statutory framework.  Section 1225 describes the process of inspecting and removing immigrants who are actively crossing the border or entering at a port of entry.  *See Jennings*, 583 U.S. at 287 ("That process of decision [described in § 1225] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible."); 8 U.S.C. § 1225(b)(2)(A).  It explicitly applies to "an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . ."  8 U.S.C. § 1225(b)(1)(A)(iii)(II).  It makes little sense to apply § 1225 to Petitioner who has resided in the United States for over four years and is not actively entering the country.

That is not all.  The existence of § 1226(c) also cuts against Respondent's position here because Respondent's interpretation of § 1225(b) makes § 1226(c)'s mandatory detention

13

provision superfluous. To be sure, subsections 1226(c)(1)(E)(i)–(ii) provide for mandatory detention of certain aliens. But it applies only to those aliens who both entered the country without inspection under 8 U.S.C. § 1182(a)(6)(A), (C), and (7) and who are also "charged with, . . . arrested for, . . . convicted of . . ." certain crimes. 8 U.S.C. § 1226(c)(1)(E)(i)–(ii). And so, to interpret § 1225(b)(2)(A) as Respondent argues would subject to mandatory detention every alien who did not lawfully enter the country. This reading would strip 1226(c) of meaning. What is more, Congress only recently added subsection 1226(c)(1)(E) when it passed the Laken Riley Act. Pub. L. No. 119-1, 139 Stat. 3 (2025). Respondent's interpretation asks this Court to presume Congress pointlessly amended the statute with a redundant provision when it most recently considered it. The Court declines to do so. *See Bilski v. Kappos*, 561 U.S. 593, 607–08 (2019) ("This would violate the cannon against interpreting any statutory provision in a manner that would render another provision superfluous.").

At bottom, §§ 1225 and 1226 are different statutory provisions that apply to different contexts. And the Supreme Court has already distinguished the two. In *Jennings*, the Court determined that the government may "detain certain aliens seeking admission into the country" and that the § 1225 process "generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." 583 U.S. at 287, 289. Whereas § 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." 583 U.S. 281, 289 (2018) (emphasis added). Respondent has articulated no compelling reason to stray from this commonsense understanding.

14

So the Court finds § 1226 governs the detention of an alien like Petitioner, who has no criminal history and who has been residing in the United States for several years. Petitioner is therefore subject to the discretionary bond process under § 1226.

### III.    Due Process

Because the Court has found that § 1226(a) applies to Petitioner's detention, he is owed the process given to him under the statute. *See, e.g. Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) ("[A]n alien in [Petitioner's] position has only the rights . . . that Congress has provided by statute."). Petitioner alleges that Respondent violates his due process rights by continuing to detain him without a bond hearing. (ECF No. 1 at PageID 9; ECF No. 11 at PageID 56.) Respondent counters that because Petitioner complains that he is detained under the wrong statute, even if his detention is unlawful, it is not unconstitutional. Respondent notes that Petitioner "has been given notice of the charges against him, has access to counsel, may attend hearings with an immigration judge, can request bond at that time, and has the right to appeal the denial of any request for bond." (ECF No. 10 at PageID 40–41 (citing 8 U.S.C. § 1362).) Put simply, Respondent asserts that § 1225(b)(2)(A) has already afforded Petitioner the due process that Congress chose to provide him. (*Id.*)

The Fifth Amendment of the U.S. Constitution protects every person from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Sixth Circuit generally "applies the balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976), to evaluate the level of process owed to a noncitizen." *Godinez-Lopez*, 2025 WL 3047889, at *6 (citing *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020)). And under *Matthews*, the Court must consider (1) "the private interest that will be affected by the official action." (2) "the risk of an erroneous deprivation of such interest," and (3) "the

Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

All three factors weigh in Petitioner's favor. He has a strong liberty interest in being free from physical detention. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The risk of erroneous deprivation is high here considering that Respondent and the BIA's current position is to afford him no bond hearing whatsoever. And bond hearings are a significant procedural safeguard to balance the Government's interest in immigration enforcement against individual liberties. So the Court finds that the Government's interest in detaining Petitioner without that procedural safeguard does not outweigh Petitioner's liberty interest or the risk of erroneous deprivation. This is all the more true because Petitioner has no meaningful opportunity for an immigration judge to consider whether he is a danger to society or a flight risk. And the fact that Petitioner has been living and working in the United States for the past several years with no criminal history further tips the scales in his favor.

This all makes clear that Petitioner is entitled to a bond hearing before an immigration judge. And not only that, but his continued detention without that bond hearing violates his due process rights. The Court therefore **GRANTS** the Petition.

## IV.    Attorney's Fees and Costs

Petitioner seeks attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412. (ECF No. 1 at PageID 9.) Section 2412(b) allows a court to award "reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States." 28 U.S.C. § 2412(b). The Federal Rules require that claims for attorney's fees and related

16

expenses be made by motion. Fed. R. Civ. P. 54(d)(2)(A). So Petitioner must timely file a motion that complies with Local Rule 54.1(b) to seek attorney's fees and costs. *See* L.R. 54.1(b).

## CONCLUSION

Immigration policies have long been subject to the changing tides of government. But those changing tides cannot usurp statutory authorization. For the reasons above, the Court **GRANTS** the Petition and **ORDERS** Respondent to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) and 8 C.F.R. § 1236.1(c)(8), (d)(1) within 7 days of the entry of this Order. The Court further **ORDERS** Respondent to release Petitioner pending that bond hearing. And the Court further **ENJOINS** Respondent from pursuing Petitioner's detention under 8 U.S.C. § 1225(b)(2)(A).

**SO ORDERED**, this 18th day of December, 2025.

                                                    s/Thomas L. Parker
                                                   THOMAS L. PARKER
                                                   UNITED STATES DISTRICT JUDGE